**F.A. CHAPMAN and Carol Chapman, his wife, Plaintiffs-Appellants,**

v.

**ST. LOUIS COUNTY BANK, Defendant-Respondent.**

**No. 44726.**

Missouri Court of Appeals, Eastern District, Division 4.

Feb. 22, 1983.

Motion for Rehearing/Transfer to Supreme Court Denied April 15, 1983.

Application to Transfer Denied May 31, 1983.

Dennis J. Tuchler and William H. Greer, St. Louis, for plaintiffs-appellants.

Albert H. Hamel, Clayton, for defendant-respondent.

PUDLOWSKI, Presiding Judge.

Appellants Fred A. and Carol Chapman initiated a lawsuit against respondent St. Louis County Bank to prevent its foreclosure upon certain real estate. The trial court subsequently dismissed their petition for failure to prosecute and entered judgment in behalf of the bank and against the Chapmans on the Bank's counter-claim. The Chapmans now appeal the trial court's order of dismissal. We affirm.

The Chapmans filed their original lawsuit against St. Louis County Bank on December 19, 1978, seeking a temporary restraining order to prevent a foreclosure sale on December 20, 1978, on property held by them. The show cause hearing was delayed on numerous occasions for several reasons. The day before the scheduled hearing on February 7, 1979, the Chapmans' first attorney withdrew. The Chapmans' second attorney entered his appearance but requested a legislative continuance. In April 1979, the Bank set the hearing for August 13, 1979, but the parties agreed in July 1979 to reset the hearing for November 19, 1979, so as to permit them to file amended pleadings. The Chapmans filed an eight count amended petition in August 1979 to which the Bank filed in the same month its four

count counter-claim and answer. Extensive discovery, including numerous depositions, ensued from late August to the hearing of November 1979, at which time the court entered its temporary injunction preventing the foreclosure sale.

The Bank set its motion to dissolve the temporary injunction for hearing in February 1980 but the Chapmans' attorney postponed the hearing for a legislative continuance. On May 7, 1980, the Bank reset its motion for hearing on July 7, 1980. The Chapmans' second attorney withdrew two days later, notifying the Chapmans of his withdrawal, the hearing for July 1980 and the need for them to secure counsel immediately.

The Chapmans failed to appear at the hearing date in July 1980. They later denied any prior knowledge or notice of the hearing for that day. The Chapmans did attend the resulting foreclosure sale in November 1980, but did not answer interrogatories sent them in December 1980 by the Bank. The Chapmans sat on their lawsuit from the time of their second attorney's withdrawal in May 1980 until March 23, 1981, when threatened with the sanction of dismissal of their amended petition. Their third attorney entered on March 23, 1981. A peremptory setting for July 1981 was agreed to by the parties in April 1981, and the Chapmans were on notice that no continuances would be forthcoming. Less than one month later, the Chapmans filed their motion to vacate the peremptory trial setting and for continuance stating that they needed to add new defendants, consolidate other pending cases and add a new count of fraud to their cause of action. The Chapmans learned of the need to amend their petition following the settlement on May 18, 1981, of an apparently related lawsuit, the nature of which this court is not apprised.

Upon the trial court's denial of their motion for a continuance at the pre-trial conference in June 1981, the Chapmans third attorney withdrew. Several weeks later, but prior to the trial date, the Chapmans filed their answers to interrogatories and produced documents *pro se.* On the date of the peremptory trial setting, Fred Chapman arrived without counsel and with a copy of his *pro se* motion to vacate the trial setting and for continuance which the trial court denied. The Chapmans refused to proceed to trial whereupon the trial court dismissed their eight count petition for failure to prosecute. Chapman then left the courtroom. The trial court heard evidence and found in favor of the Bank on its counterclaim. Following the trial court's entry of judgment against them, the Chapmans secured most competent counsel for pursuing their appeal.

■ The first issue raised by appellants is whether the trial court committed reversible error in overruling their motion to vacate the pre-trial conference, peremptory trial setting and for continuance. The grant or denial of a continuance lies within the legitimate discretion of the trial court and every intendment is in favor of the trial court's decision. *In re Marriage of Koehler,* 633 S.W.2d 169, 171[1] (Mo.App. 1982). Our determination is not whether we would have exercised our discretion in the same way, but whether the trial court abused its discretion. *Moslander v. Dayton Tire & Rubber Co.,* 628 S.W.2d 899, 902[1, 2] (Mo.App.1981). We cannot make such a finding here. The parties had agreed to a peremptory setting; the court had advised appellants in early June to be prepared for the trial setting in July 1981. The record indicates a singular lack of interest on the Chapmans' part to prosecute their claim. We find no abuse of judicial discretion in denying the continuance and in requiring the Chapmans to go to trial on July 7, 1981.

■ Appellants also contend that their motion was, in substance, a motion for leave to amend and that the trial court should have granted leave to amend even though not so requested. If a plaintiff desires to file an amended petition it is up to him to ask leave to do so. *Cady v. Hartford Accident and Indemnity Co.,* 439 S.W.2d 483, 486 (Mo.1969); *Jones v. Williams,* 357 Mo. 531, 209 S.W.2d 907, 911 (1948). In this case, the first mention of

this issue was not captioned in the form of a request to amend, but was denominated a motion to vacate pre-trial conference, peremptory setting and for continuance. No motion for leave to amend was ever presented to the trial court. This point is denied.

■■■ Even accepting plaintiffs' argument that the motion to vacate and for continuance was, in substance, a motion requesting leave to amend, we find no abuse of discretion by the trial court in its denial of appellants' motion, either at the pre-trial conference in June 1981 or at the trial in July 1981. The spirit of our rules is to permit amendments when justice so requires. Rule 55.33(a). Though the rules stress liberality in allowing amendments to pleadings, granting such leave is not mandatory. *Smith v. St. Louis County Softball Assoc.*, 623 S.W.2d 38, 40[5] (Mo.App.1981). The trial court has wide discretion in granting or denying leave to amend which discretion will not be overturned on appeal unless there is an obvious and palpable abuse thereof. *Brazell v. St. Louis Southwestern Railway,* 632 S.W.2d 277, 281[2] (Mo.App. 1982). Determination of whether the trial court abused its discretion in granting or denying leave to a party to amend his pleading in a given case is best measured in terms of whether "justice" is subserved or subverted by the course taken. If justice is subserved it is difficult to envision an abuse of discretion. Conversely, if "justice" is subverted an abuse of discretion is readily discernable. *Clayton Brokerage Co. of St. Louis v. Lowrance,* 592 S.W.2d 218, 225[2] (Mo.App.1979). Appellants had already been given one opportunity to amend their petition. Extensive discovery resulted from that amendment. Appellants made no effort to advise the trial court what additional facts they could allege by way of the second amended petition that would make any difference in the legal situation already existing. Appellants claimed, but made no showing, that the settlement of another case affected the case at bar. There was no showing that the substance of the proposed amendment was unknown at the time the amended pleadings were first framed in

August 1979. *Ackerman v. Roufa,* 584 S.W.2d 100, 103[9] (Mo.App.1979). There was no showing that the trial court's denial of a continuance would preclude the Chapmans from establishing entitlement to relief for a claimed wrong. On balance, "justice" was not subverted when the trial court denied the Chapmans a continuance and, effectively, leave to amend their petition. We find no obvious or palpable abuse in the trial court's actions which would require reversal.

The second issue is whether the trial court erred when it allowed the Chapmans' third attorney to withdraw less than a month before a peremptory trial setting. The Chapmans assert that they were deprived of a fair trial by the action of the trial court judge in permitting their attorney to withdraw from the case some 30 days before the case was tried, without time to retain other counsel or to prepare for trial, denying a continuance on that ground and requiring Chapman to act involuntarily as his own counsel. The Chapmans forcefully insist upon their right to be represented by counsel at all stages of the litigation. They rely on *Magerstadt v. La Forge,* 303 S.W.2d 130 (Mo.1957) wherein the Supreme Court held that the plaintiff was denied due process when the trial court permitted plaintiff's counsel to withdraw but denied the request of plaintiffs' new counsel to appear on the date of the peremptory setting because the new counsel intended to seek a continuance from the peremptory trial setting. The Supreme Court held that plaintiff's counsel was entitled to enter its appearance for plaintiff. The instant case is similar to *Magerstadt* because in both cases counsel withdrew approximately one month before a peremptory trial setting and in both cases the trial court refused to grant a continuance on the day of the peremptory setting. However, it is distinguishable from *Magerstadt* because in *Magerstadt* plaintiff had secured counsel on the date of the trial. The record here is bare of any appearance at trial by any attorney in plaintiffs' behalf or of any efforts by plaintiffs to secure counsel for the

trial setting. The record abounds with evidence that the plaintiffs elected to pursue their action *pro se.*

■ The record reflects that, in the nearly one month period following the withdrawal of their third attorney, plaintiffs made little or no effort to secure other counsel. The court memorandum signed and acknowledged by Fred Chapman at the pre-trial conference in June 1981 reflected agreement to the attorney's withdrawal and knowledge that the case was set for trial in July 1981 and would not be continued. Appellants made no showing that they objected to their attorney's "eleventh hour" withdrawal. Several weeks later, prior to the trial, appellants filed their answers to interrogatories and produced documents *pro se.* At trial appellants did not deny they had adequate opportunity to have counsel. Appellants admitted having engaged three attorneys in the past. While Chapman denied that he informed his last attorney that he intended to proceed in propria persona, he arrived on the date of the peremptory setting in July not only without counsel, but also with a copy of his *pro se* motion to vacate and for continuance. Following the trial in July, he filed his *pro se* motion to set aside the order of final judgment and his *pro se* motion for new trial. The Chapmans' activities evidenced intent to proceed *pro se.* Additionally, prior to the trial of July 1981, the Chapmans had failed to secure counsel for the lawsuit following their second attorneys' withdrawal in May 1980 until March 1981. This prior ten month span illustrates a pattern of the Chapmans' lack of diligence with respect to a right of counsel, if not an intention to proceed *pro se.* The right of counsel does not encompass the right to bring proceedings to a standstill by failure to acquire counsel. *In re Marriage of Koehler,* 633 S.W.2d at 171. *See Byars v. Byars,* 593 S.W.2d 656, 660 (Mo.App.1980).

■ The mere fact that an attorney withdraws from a case does not give a party an absolute right to continuance. *Harms v. Simpkin,* 322 S.W.2d 930, 933[4] (Mo.App.1959); Annot., 48 ALR2d 1155 (1956). Where the trial court does not abuse its discretion its refusal of the continuance shall not be disturbed on appeal. Here the Chapmans had actual knowledge that the case was set for trial four weeks in advance. Absent a showing that appellants had not had such knowledge long enough to enable them to properly prepare with or without counsel, they are not entitled to a continuance. In each case this is a question for the discretion of the trial court. *Harms v. Simpkin,* 322 S.W.2d at 933. Only in extreme cases where it clearly appears that the moving party, in this case, plaintiffs, is free of any dereliction will this court disturb the trial court's decision.

■ In the matter of granting continuances, tremendous discretion is vested in the trial court and reversible error based upon the denial of the continuance is exceptional. *Shelton v. Missouri Baptist Foundation,* 573 S.W.2d 121, 124 (Mo.App.1978). Here, appellants offered no explanation for the cavalier approach which they appeared to have taken to the employment of new counsel. Despite knowledge on June 11, 1981, that the case would proceed to trial on July 7, 1981, the Chapmans did not engage counsel until several weeks *after* the hearing date nor did they show that had they acted promptly to obtain new counsel, the trial setting of July 7, 1981, could not have been met. In view of all the circumstances, appellants are hardly to be credited with due diligence in seeking a new attorney. We find that the Chapmans' failure, given their knowledge of their attorney's withdrawal and impending court date, to procure counsel, or any efforts to that end, and their subsequent actions reflect their conscious election to proceed *pro se.* Considered in their entirety, the circumstances do not show that the Chapmans were denied the right to counsel of their choice. Appellants, notwithstanding the commendable job of their able counsel on appeal, have only themselves to censure that they were forced to go to trial without counsel. We affirm.

KELLY and SNYDER, JJ., concur.